**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| CHERYL BURNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-00191-SEB-VSS |
| | ) | |
| JO ANN B. BARNHART, Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Cheryl Burns ("Burns") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. BACKGROUND**

Burns filed an application for SSI on December 18, 2001. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on July 17, 2003. Burns was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Burns, a medical expert and a vocational expert testified at the hearing. The ALJ issued a decision on September 9, 2003, denying benefits. On December 10, 2004, the Appeals Council denied Burns' request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Burns had not engaged in substantial gainful activity since September 18, 2001; (2) the medical evidence established that Burns had degenerative disc disease of the lumbosacral spine with a history of a left hemilaminectomy at L4-L5, migraine headaches, and scoliotic posture, but Burns did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; (3) Burns' subjective complaints of any totally debilitating pain and/or any other totally debilitating symptomatology were not supported by the objective medical evidence of record, nor by the treatment notes and records from her treating physicians, nor by the report from the consultative examiner, and were not credible; (4) Burns had the residual functional capacity ("RFC") to occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for a total of about six hours in an eight hour workday; sit for a total of about six hours in an eight hour workday; needed to change position every hour for about ten to fifteen minutes; and her ability to push and/or pull was limited to the same extent as her ability to lift and/or carry; she should never climb ladders, ropes, or scaffolds; could occasionally climb ramps and climb stairs; and could occasionally balance, stoop, kneel, crouch, and crawl; she had no manipulative limitations, visual limitations, or communicative limitations; she should avoid all exposure to heights but had no limitations or restrictions regarding exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, or poor ventilation, or hazards such as machinery; (5) Burns' activities of daily living were not restricted, she did not have any difficulties in maintaining social functioning, in maintaining concentration, persistence or pace, and she had never experienced any episodes of decompensation due to any emotional, mental, psychological, or psychiatric impairment; (6) Burns could not perform any of her past relevant work; (7) Burns was forty-two years of age, which is defined as a younger individual, and had attended the 12th grade but had not graduated from high school, and she did not have any skills which were transferable to the skilled or semiskilled work functions of other work which she could perform; (8) section 416.969 of Regulations No. 16, and Rules 202.17 and 202.18, Table No. 2, and Rules 201.24 and 201.25, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, indicated a finding of not disabled was appropriate; and (9) even if Burns was not able to perform a full and complete range of light and sedentary unskilled work activity, there were a significant number of light and sedentary unskilled occupations existing throughout the State of Indiana which she could perform, including 3,234 sedentary unskilled cashier jobs, 314 sedentary unskilled information clerks, 4,248 sedentary unskilled assemblers, 540 sedentary unskilled production inspectors, checkers, and examiners, and 185 sedentary unskilled hand packers and packagers. With these findings in hand, and through the application of applicable rules, the ALJ concluded that Burns had not been disabled as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.  Analysis

The ALJ determined that although Burns had severe impairments consisting of degenerative disc disease of the lumbosacral spine with a history of a left hemilaminectomy at L4-L5, migraine headaches, and scoliotic posture, she could still perform a significant number of sedentary unskilled jobs.  Burns argues that the ALJ's decision is not supported by substantial evidence.

3

Burns first contends that the ALJ failed to assess the frequency or intensity of her migraine headaches.  The ALJ, however, did not ignore Burns' history of migraine headaches.  He included migraines as one of Burns' severe impairments and in the hypothetical posed to the vocational expert. (R. at 17, 21, 58).  Although the ALJ did not discuss the headaches  at great length, it is noted that in the RFC form completed by treating physician Dr. Tiritilli, there was no mention of migraine headaches or any limitations therefrom. Burns asserts that she sought treatment for migraines five times in 2002 and five times in 2003, with several 3 and 4 month gaps between reported complaints.  At the hearing, Burns testified that she had recently started taking a prescription for her migraines which totally relieved her pain.  (R. at 36, stating that the Imitrex helped, "it took it away").  No other medical source opinion indicated that Burns' headaches would prevent her from performing work functions on a regular basis. Given the record as a whole, there is no error in the ALJ's evaluation of Burns' migraine headaches.

Next, Burns argues that the ALJ failed to provide an adequate explanation as to why he found her less than credible.  The ALJ found that Burns' subjective complaints of any totally debilitating pain and/or any other totally debilitating symptomatology were not supported by the objective medical evidence of record, nor by the treatment notes and records from her treating physicians, nor by the report from the consultative examiner, and were not credible. (R. at 21).  The ALJ recited the appropriate criteria for evaluating a claimant's credibility.  (R. at 18, citing SSR 96-7p and listing each factor). He reviewed the evidence of record and determined that the objective evidence did not support a finding that Burns experienced "totally debilitating pain" or symptomatology.  (R. at 19).  He further noted that the consulting examining physician, Dr. Khawandi, opined that Burns' daily life activities had been "minimally to moderately affected by her back pain."  (R. at 20).  The ALJ also determined that Burns' prior work record did not bolster her credibility, because she had not performed any work activity for sufficient duration to be considered substantial gainful activity, other than in 1990, 1997 and 1998.  *Id.*

The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). Although the ALJ did err to the extent he held Burns' symptoms to a standard of totally debilitating pain, because the ALJ did acknowledge that Burns had pain and did consider the appropriate criteria in finding her less than credible, the court does not find under these circumstances that the ALJ committed reversible error.  The ALJ provided reasons supported by record evidence for finding not fully credible Burns' allegations that she could not work. The ALJ's discussion relating to Burns' credibility was adequate to allow the court to trace his reasoning.  The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

4

Burns next argues that the ALJ failed to take into account the reduced range of motion of her dorsolumbar spine identified by consulting examining physician Dr. Khawandi. Dr. Khawandi documented that Burns had reduced range of motion in forward flexion (70 degrees, with 90 degrees normal), lateral flexion (10 degrees, with 30 degrees normal), and right rotation (15 degrees) and left rotation (10 degrees, with 30 degrees normal). (R. at 126). Dr. Khawandi also opined that "[a]ctivities involving reaching or bending forward are affected because of her back pain. Pushing and pulling, especially for moderately heavy to heavy weights would be affected, especially as this would create strain on the lumbrosacral spine." (R. at 125).

At the hearing, the medical expert reviewed Dr. Khawandi's opinion, and that of the State Agency physicians, and treating physician Dr. Tiritilli, specifically noting the reports of decreased range of motion. (R. at. 47-48). The medical expert opined that Burns could perform between light and sedentary exertional work, meaning that she would be limited to lifting or carrying or pushing and pulling twenty pounds occasionally and ten pounds frequently, and that she would have to change positions every hour. (R. at 49-52). The ALJ adopted these restrictions in his RFC assessment. (R. at 17, 21).

Dr. Khawandi indicated that Burns' ability to reach or bend forward were "affected" and that pushing and pulling for moderately heavy to heavy weights would be affected. Dr. Khawandi's opinion was not overly specific in this regard, but it is not inconsistent with the ALJ's RFC finding. The ALJ found that Burns could only occasionally stoop, kneel, and crouch, and could push or pull ten pounds frequently and twenty pounds occasionally. *Id.* Dr. Tiritilli opined that Burns could not do any twisting, stooping (bending), or crouching. (R. at 82). The ALJ did not adopt these restrictions in their entirety because they were not documented by the objective medical evidence and because he chose to give more weight to the medical expert's opinion because he is an orthopaedic specialist, while Dr. Tiritilli is an internist.[1] The ALJ's RFC did take into account some restrictions on Burns' ability to stoop, bend, crouch, push, and pull, and his reasoning in that regard is supported by substantial evidence. The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

In sum, in determining Burns' eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Burns' age, education, and work history; (2) Burns' history of diagnoses, treatment, medications, and evaluations; (3) Burns' own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of Burns, a medical expert, and a vocational expert. There was no significant evidence,

---

[1] Burns' contention that Dr. Tiritilli opined that she was incapable of reaching is not well taken. Actually, Dr. Tiritilli indicated that Burns' ability to reach overhead was *not* affected by her impairment. (R. at 83).

symptom, complaint, or issue which the ALJ's decision overlooked. Substantial evidence supports the ALJ's findings of fact and identification and assessment of Burns' impairments, and there was no error of law in the manner in which the evidence was evaluated. The ALJ sufficiently articulated his assessment of the evidence to assure the court that he considered the important evidence and allow the court "to trace the path of [his] reasoning," *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted), and there was substantial evidence to support the ALJ's determination that Burns was not disabled as defined in the Act at any time through the date of the ALJ's decision.

### III.  CONCLUSION

There was no error in the assessment of Burns' application for SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Burns is not entitled to relief in this action.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  03/03/2006

_signature: Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana